UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-20804-SINGHAL(s)

UNITED STATES OF AMERICA

v.

ASHLEIGH HOLLOWAY,

        Defendant.
_____/

## FACTUAL PROFFER

The United States of America and the Defendant, ASHLEIGH HOLLOWAY (the "Defendant" or "HOLLOWAY"), through counsel, hereby stipulate and agree that had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

Beginning in or around 2011, and continuing through in or around November 2019, in the Southern District of Florida and elsewhere, the Defendant, did knowingly and willfully, combine, conspire, confederate, and agree with other persons, including William D. FOSTER, a/k/a "William Cortes," a/k/a "William Cortez," a/k/a "Frank Herman Cruz," a/k/a "Frank Cruz," and Hanah CHAN, to use various personal and business accounts to structure deposits derived from illicit proceeds obtained through the operation of a commercial sex enterprise under FOSTER's leadership, in such a way as to evade the transaction-reporting requirements.

It was the object and purpose of the conspiracy for HOLLOWAY and her co-conspirators to deposit and to assist in the depositing of large sums of cash into accounts at domestic financial institutions by dividing the large sums into smaller deposits below the reporting threshold to avoid filing required reports that would raise suspicion or draw the attention of the financial institution,

law enforcement, or other authorities to the cash deposits. HOLLOWAY knew that most of the funds that were being structured were the proceeds of unlawful activity, *i.e.*, commercial sex. HOLLOWAY also knew that the deposits were being structured into amounts lower than $10,000 to avoid triggering the currency-transaction reporting requirements that might have alerted the bank or law enforcement to the conspiracy's activities. HOLLOWAY knew the unlawful purpose of the plan and willfully joined it. During the conspiracy, one of the co-conspirators knowingly engaged in at least one overt act as described in the Superseding Information. The overt act was committed on or about the time alleged with the purpose of carrying out and accomplishing the object of the conspiracy.

Although HOLLOWAY joined FOSTER's organization in or around 2008, HOLLOWAY took on a management role within FOSTER's organization in or around 2011. From in or around 2011, and continuing through in or around November 2019, one of HOLLOWAY's roles was to recruit other females into FOSTER's organization and to groom the females by teaching them how to finesse exotic dance customers prostitution clients, how to ask for money, and how to do their hair and makeup to make themselves more attractive to customers and clients at FOSTER's direction. Additionally, HOLLOWAY was one of the females that handled the nightly earnings at FOSTER's direction. HOLLOWAY was also listed on a number of the corporate documents, bank accounts, and financial transactions.

While HOLLOWAY was part of FOSTER's organization in or around 2008, VICTIM 1 and VICTIM 2, among other females, were both residing with, and working for FOSTER at exotic dance venues and engaging in commercial sex at FOSTER's direction. VICTIM 1 and VICTIM 2 both turned over their nightly earnings for FOSTER's benefit.

After HOLLOWAY joined FOSTER's organization, she worked together with FOSTER and later with CHAN to recruit females, either themselves or through other individuals, to live with and work for FOSTER at exotic dance venues and to engage in commercial sex. These females were told by FOSTER, CHAN, and HOLLOWAY, among others, that the money that they made working at the exotic dance venues and engaging in commercial sex would be put toward investments that would benefit the females and provide for their early retirement. After these representations were made by FOSTER, CHAN, and HOLLOWAY, many of these females agreed to engage in commercial sex. The females would then turn over their earnings each night at FOSTER's direction to either FOSTER, CHAN, HOLLOWAY, or another female selected by FOSTER to be in charge of the earnings. The females, including HOLLOWAY, were not able to retain the earnings that they made from dancing and commercial sex. On average, between 2008 and 2019, between five (5) and fifteen (15) females lived with and worked for FOSTER. These females typically worked at least an eight-hour shift, approximately six days a week, every week of the year.

The representations made by FOSTER, CHAN, and HOLLOWAY, among others, to these females were false. Ultimately, the females that worked for FOSTER's organization were not provided with their earnings, a benefit from any investments that were made with their earnings, or a retirement fund, apart from basic living expenses. Any money spent on basic living expenses required FOSTER's express permission. When these females attempted to leave FOSTER, they were threatened with psychological and financial harm. HOLLOWAY further acknowledges occasions where FOSTER used violence against certain females within his organization, including violence against HOLLOWAY, when FOSTER perceived that the females did not comply with

his orders or rules. Ultimately, when females were able to leave FOSTER, they left with little to none of their earnings from engaging in commercial sex.

FOSTER further directed the females within his organization to travel to various locations in the United States, including to and from New York, New Jersey, Florida, Michigan, and Nevada, where the females would dance at exotic venues, engage in commercial sex, and provide their earnings to CHAN, FOSTER, HOLLOWAY, or another female who was designated by FOSTER to be in charge of the earnings. Specifically, HOLLOWAY relocated to the New York/New Jersey area at FOSTER's direction with VICTIM 1 and VICTIM 2 to work at exotic dance venues and engage in commercial sex. Ultimately, the earnings from commercial sex that were made at these various locations was deposited into accounts controlled by FOSTER.

HOLLOWAY recruited VICTIM 3 into FOSTER's organization. HOLLOWAY met VICTIM 3 in mid-August at a nightclub in Broward County, Florida. Approximately one week after meeting VICTIM 3, HOLLOWAY picked VICTIM 3 up and they went to an exotic dance venue. That night, HOLLOWAY introduced VICTIM 3 to FOSTER. HOLLOWAY and FOSTER invited VICTIM 3 to move in with FOSTER. HOLLOWAY and FOSTER explained to VICTIM 3 that the girls living with, and working for, FOSTER were exotic dancers who pooled their money and invested in companies for the females' benefit. VICTIM 3 was told that she would make a lot of money from these investments. VICTIM 3 was not told that she would be required to engage in commercial sex if she began to live with the group.

That night, HOLLOWAY drove VICTIM 3 to get her belongings and brought VICTIM 3 to a residence located at 2941 Angler Drive, in Delray Beach, Florida (the "Angler Drive Residence"). Soon after VICTIM 3 arrived, FOSTER came to the Angler Drive Residence to

4

pick up VICTIM 3 and drove VICTIM 3 to another residence located at 4630 Sherwood Forest Drive, in Delray Beach, Florida.

The next morning, VICTIM 3 was told by FOSTER that she needed to go on the lemon diet and lose weight if she wanted to get the cosmetic surgeries that FOSTER represented that he would provide. HOLLOWAY told VICTIM 3 that the lemon diet was difficult but that it worked.

Subsequently, on or about September 4, 2019, VICTIM 3 travelled to the Detroit, Michigan area at FOSTER's direction to work at exotic venues there with other females. Only when VICTIM 3 arrived in the Detroit, Michigan area, was she told that she had to engage in commercial sex.

At the direction of FOSTER, HOLLOWAY used and assisted in using her own personal bank accounts, the bank accounts of other persons, and business accounts to deposit these illicit proceeds from the commercial sex enterprise in such a way as to conceal or disguise the nature, location, source, ownership, and control of the proceeds, *i.e.*, that the deposits were the proceeds of commercial sex, and were controlled by HOLLOWAY's ultimate boss—FOSTER. These accounts included, but were not limited to, the following accounts:

| Business Accounts | Bank Account Information |
|---|---|
| Live LLC | J.P. Morgan Chase Account Ending in 3969 |
| Taboo Retail LLC | J.P. Morgan Chase Account Ending in 0700 |
| Ocean House Entertainment | Bank of America Account Ending in 3086 |
| Ocean House Entertainment | Regions Account Ending in 3704 |
| ZAWYOU LLC | Bank of America Account Ending in 7839 |
| MTN Doo Logistics | Bank of America Account Ending in 9622 |

| Personal Accounts | Bank Account Information |
|---|---|
| William D. Foster | J.P. Morgan Chase Account Ending in 1528 |
| William D. Foster | J.P. Morgan Chase Account Ending in 2505 |
| William D. Foster | Regions Account Ending in 9981 |
| Hanah Chan | Bank of America Account Ending in 2640 |

| Hanah Chan | Regions Account Ending in 3956 |
| Hanah Chan & Ashleigh Holloway | TD Bank Account Ending in 9380 |
| VICTIM 4 | J.P. Morgan Chase Account Ending in 7981 |
| Ashleigh Holloway | J.P. Morgan Chase Account Ending in 3597 |

These accounts received hundreds of thousands of dollars in proceeds from commercial sex.

Furthermore, at FOSTER's direction, HOLLOWAY made cash deposits or assisted in the making of cash deposits at offices of the below-listed domestic financial institutions located in Miami-Dade, Broward, and Palm Beach Counties, among other locations, in such a way as to avoid the transaction reporting requirements, specifically, the requirement that domestic financial institutions and banks must file currency-transaction reports with the Government listing all deposits, withdrawals, transfers, or payments involving more than $10,000 in cash or currency.

Some of the structured deposits made during the course of the conspiracy include:

| Approx. Date of Deposit | Nature of Transaction | Amount |
|---|---|---|
| 5/19/2016 | Cash Deposit into CHAN's Bank of America Account Ending in 2640 | $5,000 |
| 5/19/2016 | Cash Deposit into Ocean House Entertainment's Bank of America Account Ending in 3086 | $5,000 |
| 5/19/2016 | Cash Deposit into ZAWYOU's Bank of America Account Ending in 7839 | $3,600 |
| 5/19/2016 | Cash Deposit into ZAWYOU's Bank of America Account Ending in 7839 | $1,400 |
| 5/19/2016 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $4,850 |
| 5/19/2016 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $150 |
| 5/19/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $5,000 |
| 5/19/2016 | Cash Deposit into HOLLOWAY'S J.P. Morgan Chase Account Ending in 3597 | $4,500 |
| 5/19/2016 | Cash Deposit into VICTIM 4's J.P. Morgan Chase Account Ending in 7981 | $5,000 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $3,900 |

| Date | Description | Amount |
|---|---|---|
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,600 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,500 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,500 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,400 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $680 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $420 |
| 11/15/2016 | Cash Deposit into CHAN's Bank of America Account Ending in 2640 | $3,750 |
| 11/15/2016 | Cash Deposit into Ocean House Entertainment's Bank of America Account Ending in 3086 | $5,900 |
| 11/15/2016 | Cash Deposit into Taboo Retail's J.P. Morgan Chase Account Ending in 0700 | $1,100 |
| 6/4/2017 | Cash Deposit into CHAN's Bank of America Account ending in 2640 | $5,000 |
| 6/4/2017 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $3,000 |
| 6/4/2017 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $2,000 |
| 6/5/2017 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $9,800 |
| 6/5/2017 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $6,750 |
| 9/21/2018 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $3,000 |
| 9/21/2018 | Cash Deposit into HOLLOWAY's J.P. Morgan Chase Account Ending in 3597 | $3,000 |
| 9/21/2018 | Cash Deposit into HOLLOWAY's J.P. Morgan Chase Account Ending in 3597 | $2,500 |
| 9/21/2018 | Cash Deposit into CHAN and HOLLOWAY's TD Account ending in 9380 | $5,340 |
| 9/22/2018 | Cash Deposit into HOLLOWAY's J.P. Morgan Chase Account Ending in 3597 | $3,000 |
| 9/22/2018 | Cash Deposit into HOLLOWAY's J.P. Morgan Chase Account Ending in 3597 | $2,200 |
| 9/22/2018 | Cash Deposit into HOLLOWAY's J.P. Morgan Chase Account | $200 |

| | | |
|---|---|---|
| | Ending in 3597 | |
| 9/22/2018 | Cash Deposit into CHAN and HOLLOWAY's TD Account ending in 9380 | $3,000 |
| 9/22/2018 | Cash Deposit into CHAN and HOLLOWAY's TD Account ending in 9380 | $3,000 |
| 8/8/2019 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $5,000 |
| 8/8/2019 | Cash Deposit into HOLLOWAY's J.P. Morgan Chase Account Ending in 3597 | $5,000 |
| 8/8/2019 | Cash Deposit into VICTIM 4's J.P. Morgan Chase Account Ending in 7981 | $5,000 |
| 8/8/2019 | Cash Deposit into Ocean House Entertainment's Regions Account ending in 3704 | $5,000 |
| 8/8/2019 | Cash Deposit into CHAN's Regions Account ending in 3956 | $5,000 |
| 8/8/2019 | Cash Deposit into FOSTER's Regions Account ending in 9981 | $5,000 |
| 8/8/2019 | Cash Deposit into CHAN and HOLLOWAY's TD Account ending in 9380 | $5,000 |

The amount of the deposits that were structured during the course of this conspiracy were at least between $550,000 and $1,500,000. Furthermore, at least $100,000 in structured deposits were made within a twelve-month period. These deposits were then transferred, withdrawn, converted, and used by FOSTER, CHAN, and HOLLOWAY, among others, to make various transfers and purchases at FOSTER's direction.

HOLLOWAY acknowledges that the financial transactions in which she and her co-conspirators engaged involved more than one domestic financial institution operating in interstate commerce.

The parties agree that these facts, which do not include all facts known to them, are sufficient to prove beyond a reasonable doubt the Defendant's guilt with respect to Count 1 and Count 2 of the Superseding Information.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 2/26/2021   By: *Jessica*
JESSICA KAHN OBENAUF
ASSISTANT UNITED STATES ATTORNEY

Date: 03/01/2021   By: *Seda Aktas*
SEDA AKTAS
ATTORNEY FOR DEFENDANT

Date: 03/01/2021   By: *Seda Aktas* o/b/o Ashleigh Holloway
ASHLEIGH HOLLOWAY
DEFENDANT